FARM BUREAU MUTUAL AUTOMOBILE INSUR-
ANCE COMPANY *v.* NETTIE GARLITZ,
ADMINISTRATRIX, ETC.

[No. 38, April Term, 1942.]

*Decided May 27, 1942.*

616

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Elmer B. Gower,* with whom was *William A. Gunter* on the brief, for the appellant.

*William L. Wilson, Jr.,* with whom was *Edward J. Ryan* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The insurer in an automobile liability policy appeals from a judgment rendered in favor of a judgment creditor of the insured, and the single question is whether a change of statement or testimony by the insured on the original trial constituted a lack of the co-operation by him which was made by the policy a condition to liability on it.

The insured was Randall Beachey, owner of a truck, and he became judgment debtor to the administratrix of Broadwater, who was also mother-in-law of the insured, in a suit for damages in the accidental killing of Broadwater by the truck. On Saturday, February 3, 1940, Beachey brought a truck load of coal to his home near Cumberland, and left it parked there, ten or twelve feet from the house, until Monday morning. On that morning Broadwater, who was Mrs. Beachey's uncle, volunteered to unload the truck, and Beachey started the motor, leaving the emergency brake on, and Broadwater preparing to put water in the radiator. Beachey left for his work a few minutes afterwards. In some manner unknown Broadwater was subsequently crushed between the truck and the house. The ground of re-

covery by his administratrix in the original suit was danger from a defective brake. "It isn't very steep," Beachey testified, "but it's a little grade."

An investigator for the insurer, having been notified of the accident, came three days later and took Beachey's statement of the occurrence in writing. He wrote it out, and Beachey signed it below a clause reading: "I have read the statement of two pages, know its contents, and it is true to the best of my knowledge." And in it he said: "I have never had any trouble with the emergency brake, and it works all right now." Again, nine days later, Beachey gave a supplemental statement, signed after substantially the same assertion that he had read it and that it was true, and in that said: "I never had any trouble with the emergency brake holding while unloading coal on a steep bank. The truck had never drifted away from me before." Both statements were read to him before the trial, and no correction was suggested.

Called as a witness for the plaintiff in that original suit against him, Beachey testified: "You take with that load on, no emergency brake will hold." The brake had previously flown loose with him he said. "It pretty near caught me over at the mine myself (about two weeks previously) ; I was over at Mr. Bowman's getting a load of coal and that starter would make a funny noise and wouldn't take hold for me. I stepped on the starter and it locked and I opened the door, went around to crank, it started and the truck came back and almost caught me." Again, he said, the truck then drifted backwards toward him.

He conceded that the investigator put down in the written statements what he, Beachey, had said, and his explanations of the contradiction with his testimony differed somewhat, and finally came to, "I don't know." He did not remember the statement made at the first interview with the investigator. He did not at that time remember the happening two weeks previously; the fact came to him later, when he heard there was to be a trial.

He did not think he "was going to get into this mix-up." Then asked specifically why he had made the earlier statements that the truck had never drifted away from him before, and that he never had any trouble with the emergency brake holding while unloading coal on a steep bank, he answered: "I don't know," "I don't remember." He acknowledged that he had never told the insurer's attorney that he was going to change his statement.

It is to be observed that proof of the contradiction here does not depend upon conflicting testimony, or upon testimony for the defendant; all the testimony came from the insured as a witness for the plaintiff, and is therefore conclusive upon the plaintiff. It is the plaintiff's case.

Its effect seems plain. If the statements be put side by side: "I have never had any trouble with the emergency brake, and it works all right now. I never had any trouble with the emergency brake while unloading coal on a steep bank. The truck had never drifted away from me before"; and on the other hand: "You take with that load on, no emergency brake will hold; it pretty near caught me over at the mine myself, * * * I opened the door, went around to crank, it started and the truck came back and almost caught me." Comparing the statements thus, it is clear that the insured has been guilty of falsehood either in his first statements or in his testimony, and almost certainly in the testimony. There seems to be no room for a reasonable difference of opinion on that fact, and the court would need to bind itself to realities to hold otherwise. And if that be accepted, it follows that the insured did not give the insurer the co-operation which the policy required. *Appleman, Automobile Liability Insurance,* 1938 Ed., 265 to 267. "Co-operation does mean that there shall be a fair, frank and truthful disclosure of information reasonably demanded by the insurer for the purpose of enabling it to determine whether or not there is a genuine defense." *Buckner v. Gen. Casualty Co.,* 207 Wis. 303, 309, 241 N. W. 342, 344. "A defendant has not given full support to an

insurance company in the defense of an action when he misleads the company by placing the blame for the accident on the operator of another car which he says caused him to run into a pole, and then goes upon the witness stand, after he has lulled the insurance company into a sense of security, and admits he was responsible for the accident in order that the plaintiff may eventually recover against the insurance company." *Ohrbach v. Preferred Accident Ins. Co.*, 227 App. Div. 311, 237 N. Y. S. 494, 496; *Hunt v. Dollar*, 224 Wis. 48, 53, 271 N. W. 405; *Bassi v. Bassi*, 165 Minn. 100, 205 N. W. 947; *Coleman v. New Amsterdam Cas. Co.*, 247 N. Y. 271, 160 N. E. 367, 72 *A. L. R.* 1446, 1462. And, "the insured is bound in good faith to render assistance in the trial of the suit and in making every legitimate defense thereto." *United States F. & G. Co. v. Williams*, 148 Md. 289, 305, 307, 129 A. 660, 666. And see *Hardware Mut. Casualty Co. v. Mitnick*, 180 Md. 604, 26 A. 2d. 393, decided at this term of court.

The contradiction here, then, shows a lack of co-operation by the insured such as deprives him of his insurance against the judgment, and it follows that recovery by the judgment creditor should have been denied by giving instructions prayed by the defendant directing a verdict in its favor. The judgment creditor, too, is barred by a defense which would prevent recovery by the insured himself. *Amer. Automotive Ins. Co. v. Fidelity & Casualty Co.*, 159 Md. 631, 152 A. 523.

*Judgment reversed, without a new trial, with costs.*