FIDELITY AND CASUALTY COMPANY OF NEW
YORK *v.* McCONNAUGHY, Etc.

[No. 149, September Term, 1961.]

*Decided February 23, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Richard C. Murray* and *W. Lee Harrison,* with whom were *Smith & Harrison* on the brief, for the appellant.

*Walter B. Siwinski* and *Harry E. Goertz* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The appeal is by an insurance company from a summary judgment in favor of a judgment-creditor of an insured under an automobile liability policy. The company unsuccessfully urged below that it was not liable to the judgment-creditor because it had disclaimed liability for noncooperation by the insured before he had been found liable in a negligence suit against him by the judgment-creditor.

Margaret Ritzmann sued James Butler in 1954 to recover for injuries suffered when an automobile in which she was a passenger collided with his car. The appellant, the Fidelity and Casualty Company of New York, undertook the defense of the case under the liability policy it had issued to Butler. Following the accident, the insurance company filed an SR-21 form with the Department of Motor Vehicles (stating that at the time of the accident Butler had in force an automobile liability insurance policy) to satisfy the requirements of Code (1957), Art. 66½, Sec. 122 (codified under the sub-title "Motor Vehicle Financial Responsibility"). The issue in the negligence suit was which vehicle had been to the left of the center of the road when the accident

happened. Miss Ritzmann had several witnesses to her version of the occurrence, but investigation by the insurance company failed to locate any witness to support Butler's defense that he was driving on the right side of the road.

While being interviewed by his lawyers, selected for him by the insurance company under its policy right to control the defense of the suit, Butler said there were two witnesses whose addresses he did not know. Upon request he brought into the lawyer's office one Edward Tillman and one Overland T. Jones, each of whom, in the fall of 1955, signed a statement that he had been an eyewitness to the accident and that Butler's car had been on the right side of the road and the other car on the wrong side.

Miss Ritzmann had submitted an offer to settle her claim for $3,500. The insurance company claimed below and now claims that it rejected this offer because of the statements of Tillman and Jones as to how the accident happened.

In May 1956, on deposition, Tillman testified that he had not seen the accident; that Butler had approached him and asked him to testify that the Ritzmann automobile pulled in front of him onto his side of the road; that his previous statement, given to Butler's counsel, was false; and that Jones had been told to give a similar version of the accident.

Because of Tillman's deposition, Butler's lawyers wrote him a registered letter asking him to come in the office to discuss the case. He was examined under oath by his own lawyer in question-and-answer form, with the questions and answers recorded by one of the court stenographers of Baltimore County. After he had given various answers which the lawyer found unsatisfactory, he was advised several times of the existence of the crime of perjury and of the consequences of its commission, and thereafter he acquiesced in his counsel's repeated suggestions that he had asked Tillman to testify that the other car had pulled out onto the wrong side of the road and that Tillman had "worked on" Jones.

Nine days later the lawyers advised Butler that they were withdrawing from the case and the insurer was disclaiming liability under the policy because of his violation of the cooperation clause.

Thereafter, the settlement offer of $3,500, which the insurer had rejected because of the favorable statements of Tillman and Jones, was withdrawn. Butler secured other counsel but when he failed to appear at the trial, they struck their appearance. A verdict of $10,000 against Butler was awarded Miss Ritzmann (who by then had become Mrs. McConnaughy) on October 17, 1956. After an unsuccessful attempt to execute on the judgment, Mrs. McConnaughy filed suit against the insurance company, alleging that under the policy it had issued Butler it was "legally obligated" to pay the judgment against him.

The insurance company, in answer to the declaration and the plaintiff's motion for summary judgment, set forth Butler's breach of the policy provision to cooperate and alleged that it had been prejudiced by his false statements and his procuring witnesses who made false statements, saying in its affidavit that the plaintiff offered to settle for $3,500, "but in view of the statements obtained as aforesaid from Edward H. Tillman and Overland T. Jones, there was no acceptance of the settlement demand."

Judge Lindsay granted the plaintiff's motion for summary judgment on June 19, 1961, saying: "The motion for summary judgment is hereby granted in the amount of $10,000 with interest from October 17, 1956, and the cost of this suit." On both the law and judgment dockets the clerk made entries indicating that judgment had been rendered for the sum of "$10,000, interests and costs." On June 22, the insurance company filed its order of appeal "from the order granting summary judgment in favor of the plaintiff * * *." On July 3 the plaintiff filed a petition praying that an order be passed "directing the Clerk to amend his entries on the Court and judgment dockets so as to show a judgment in keeping with the opinion of this Honorable Court in the amount of $12,803.29, with interest and cost from June 19, 1961." (The principal figure obviously represented the $10,000 judgment with interest at 6% from 1956.)

The court passed an *ex parte* order, directing the clerk "to amend his entries on the Court and judgment dockets"

so as to show a judgment of $12,803.29 with interest from June 19, 1961, and costs.

The appellee moved to dismiss the appeal because (1) the final judgment was entered on July 3, 1961, and the appeal, noted on June 22, 1961, was premature; and (2) the appeal was not from a final judgment since it states it to be from "the order" granting summary judgment.

There is no substance to the motion to dismiss and it is denied. The court's action on July 3 was only to correct a clerical error in a final judgment it had granted on June 19, and this was a proper and permissible action. The claim that the appeal was not from a judgment but from the opinion of the court is frivolous.

On the merits, the appellees do not controvert the insurance company's contention that Butler did breach the co-operation clause. Such a clause is valid and "[t]he insured under a liability policy containing a co-operation clause is obligated to assist in good faith in making every legitimate defense to a suit for damages." *Indemnity Ins. Co. of N. A. v. Smith*, 197 Md. 160, 164. This includes a fair, frank and truthful disclosure of information requested by the insurer for the purpose of enabling it to determine whether or not there is a genuine defense. *Farm Bureau Mut. Automobile Ins. Co. v. Garlitz*, 180 Md. 615, 618. See also 8 *Appleman, Insurance Law and Practice*, Sec. 4782; Annotation, 98 A.L.R. 1465, 1470. It has been held in this connection that it is immaterial that the breach of the cooperation clause consists of "over-cooperation," as in Butler's case. *De Hart v. Illinois Cas. Co.*, 116 F. 2d 685 (7th Cir.); *Hunt v. Dollar*, 271 N. W. 405 (Wis.); *Searls v. Standard Acc. Ins. Co.*, 56 N. E. 2d 127 (Mass.). The rights of a judgment-creditor of an insured are no greater than those of the insured, in whose shoes he stands. *Automobile Ins. Co. v. Garlitz, supra.*

The appellee says the insurer may not avoid liability on the policy for three reasons:

1. The filing of the SR-21 form with the Commissioner of Motor Vehicles under the Maryland Financial Responsibility Law prevents the insurance company from disclaiming liability under the policy.

2. The insurer is blocked from disclaiming by waiver and estoppel:
    a. by the length of time it continued to conduct the defense of the case; and
    b. by the breach of professional ethics of the lawyers representing Butler at the instance of the insurance company.
3. There was no prejudice to the insurer resulting from Butler's breach of the policy provision to cooperate.

Under Maryland's Financial Responsibility Law, unless the owner or operator of a motor vehicle which is involved in an accident carries liability insurance and the insurer files a certificate so stating, the owner or operator must deposit security to meet possible judgments and must also show "proof of financial responsibility" for the future, or else lose his license and registration. Code (1957), Art. 66½, Sec. 122. The Department of Motor Vehicles requires proof of such insurance in the form of a certificate by the insurer on a form commonly called an SR-21.

Although an insurance company issuing a policy to meet the requirement of "proof of financial responsibility" is by Sec. 131 (a) (6) (F) precluded from setting up, as against a judgment-creditor of the insured, defenses that arise out of the insured's conduct (such as failure to cooperate), Sec. 131 (a) (6) (F) does not apply to those insurance policies which except an owner or operator from the security and financial responsibility requirements of Sec. 122 since these policies are not issued as "proof of financial responsibility," as that term is artfully used in Sec. 122 and in other sections of the Financial Responsibility Law. *Citizens Co. v. Allied Co.,* 217 Md. 494, 500; 40 Op. Atty. Gen. 329. Therefore, an insurer is not precluded from setting up a defense against a judgment-creditor because it has filed an SR-21 form with the Department of Motor Vehicles, stating that the motorist involved in an accident was then insured. The District Court for Maryland has so held. *State Farm Mut. Automobile Ins. Co. v. West,* 149 F. Supp. 289, 308-9. And the decisions elsewhere construing similar statutes generally are in accord. *Grady v. State Farm Mut. Automobile Ins. Co.,* 264 F. 2d 519, 522

(4th Cir.) (applying Virginia law); *Farm Bureau Mut. Automobile Ins. Co. v. Hammer,* 177 F. 2d 793, 796-798 (4th Cir.) (applying Virginia law); *Hoosier Cas. Co. of Indianapolis, Ind. v. Fox,* 102 F. Supp. 214, 229-240 (N. D. Iowa E. D.) (applying Iowa law); *Seaford v. Nationwide Mutual Insurance Co.,* 117 S. E. 2d 733, 737 (N. C.); but see the judicial treatment of the Wisconsin statute, discussed in 106 U. Pa. L. Rev. 928.

The insurer's right to assert nonliability was not foreclosed by its filing the SR-21 form.

On the point of waiver or estoppel, the insurer seems to have the better of the argument. The first thrust of the appellee's contention on this aspect of the case is that the insurance company, from the deposition of the plaintiff in the negligence case and those of three of her witnesses, taken on August 25, 1955, nearly nine months before Tillman's deposition was taken, knew "the facts of the occurrence of the accident but waited thirty-seven days before disclaiming." Certainly a defendant is not required or expected to accept the version of a plaintiff and her witnesses as true, accurate and beyond contradiction. The insurance company disclaimed within nine days of the time it learned beyond doubt that Butler had misled it and we find no reason why it either had waived the right to do so or was estopped to do so.

Appellee's second claim of waiver and estoppel—that Butler's lawyers, who also represented the insurance company, violated their professional obligations—is more complex.

Canon 6 of the Canons of Professional Ethics of the American Bar Association, which was adopted by the Maryland State Bar Association on June 25, 1948 (see Vol. 53 of the Transactions of the Maryland State Bar Association, p. 198), and has been adopted by the Baltimore City Bar Association (see page 37 of the pamphlet containing the Charter, By-Laws and Canons of Professional Ethics and Judicial Ethics, issued in September 1959) says in part:

> "It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the mean-

ing of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." [1]

The customary clause in insurance policies requiring the insured to permit the insurer's lawyer to defend claims insured against is consent in advance by the insured to such dual representation and obviates an improper relationship, but if, in the course of the dual representation an actual conflict develops between the interests of the insured and those of the insurer, the lawyer must either withdraw entirely from the case or continue to represent one of the clients only. He can not further the interests of only one of the two while he still represents the other, or he breaches Canon 6. Various courts have condemned such dual representation in circumstances analogous to those in the instant case, and several have held that when it occurred, the insurance company had waived its right to disclaim or was estopped to do so.

In *Allstate Ins. Co. v. Keller,* 149 N. E. 2d 482 (App. Ct. Ill.), the Court refused to allow a disclaimer because counsel who represented both the insured and the insurer acted for the insurer against the interest of the insured, while still representing the latter, and held this constituted a waiver by the company of a breach of the cooperation clause (in the giving of false information about the accident to the insurer). The Court said the lawyers became aware of a conflict of interest and then, while still representing the insured, "proceeded to take their client's deposition for the admitted purpose of placing their employer in a position to disclaim liability under the policy." *Id.* at 486. The Court quoted with approval the language of *American Employers Ins. Co. v. Goble Aircraft Sp.,* 131 N. Y. S. 2d 393, 401-402, as follows:

" 'The Canons of Professional Ethics make it pellucid that there are not two standards, one applying to counsel privately retained by a client, and

---

1. See also Canon 37, "Confidences of a Client," and Canon 41, "Discovery of Imposition and Deception."

the other to counsel paid by an insurance carrier. * * * If the interests of the carrier and the assured are or are likely to become diverse, he cannot represent both. "Divided obligations in trust relations are obnoxious to the law, and in none more so than in that of attorney and client." ' " (*Id.* at 486.)

And the Court concluded:

"It was the duty of plaintiff's attorneys upon learning of the possible conflict of interests between plaintiff and defendant, to immediately notify defendant of this fact. Their failure to take such action can be attributed only to their desire to strengthen plaintiff's position in preparation for the filing of the instant suit. It would be untenable under such circumstances to allow plaintiff to disclaim liability under the policy." (*Id.* at 486-487.)

The Supreme Court of Washington on analogous facts followed the same reasoning and reached the same result in *Van Dyke v. White*, 349 P. 2d 430. See also *Hammett v. McIntyre*, 249 P. 2d 885 (D. Ct. App. Cal.) ; *Helm v. Inter-Insurance Exchange for Auto. Club*, 192 S. W. 2d 417 (Mo.) ; *Schwartz v. Sar Corp.*, 195 N. Y. S. 2d 496. In the latter case, it was said:

"The court may not close its eyes to the obvious. The prime interest of these attorneys is the insurance company, in whose behalf they defend many cases year after year. Where the interests of the carrier and the client run parallel with each other, the attorneys undoubtedly will exert their best efforts to protect the interests of their client, since in so doing, they will also be protecting the interests of their real principal. But where, as in this case, the interests are adverse one to the other, then the attorneys may not 'assist the lost traveler along the road and at the same time prepare a trap into which he will ultimately fall.' " (*Id.* at 503.)

We have no doubt whatever that the lawyers who represented Butler and the insurance company were activated by honest, high and worthy motives and intent in taking their client Butler's deposition, but this is not the test for determining compliance with the Canons of Professional Ethics when a lawyer is confronted with the necessity of choosing between conflicting interests. The standards of the Canons require undeviating fidelity of the lawyer to his client and no exceptions can be tolerated.

We think Butler's lawyers erred but we do not think that the insurance company thereby waived its right to disclaim liability for noncooperation or became estopped to do so. The insurer, through its own claim investigator, or through counsel who did not represent Butler, could have ascertained what Butler disclosed to his lawyers, if it did not already know it well enough from Tillman's deposition, and then could have disclaimed. We are not persuaded that because the company verified its belief that there had been a breach of the policy provisions by Butler, through lawyers who continued to represent it and the insured at a time when their interests were not parallel, it lost whatever rights it otherwise would have had.

The question of whether the right to disclaim in this case depends on prejudice, is not free from difficulty. There are two main lines of authority in the country. One line takes the formalistic, technical view and holds that policy provisions for notice, forwarding of suit papers and cooperation are conditions precedent to liability by the insurer, and that a breach by the insured discharges the insurer regardless of prejudice. Some courts so holding presume prejudice. The other line holds that the policy provisions are conditions subsequent and prejudice must be shown by the insurer, if it is to be absolved. See Note, "Insurer's Duty to Defend," 68 Harv. L. Rev. 1436.

As the number of automobiles and accidents has continued to grow, it has increasingly been felt judicially that the first rule is unduly harsh, that liability contracts are at least in part third party beneficiary contracts and that it is in the public interest that those free of fault who are injured should

be protected. As a result there have been many holdings that policy defenses should not prevail except where a miscarriage of justice would otherwise result. 8 *Appleman, Insurance Law and Practice,* Sec. 4773.

The cooperation clause is included in liability insurance policies so that the insurance company will not be prejudiced in investigation and defense at trial. It should be construed and applied to effectuate its purpose. Appleman in the section just above cited says that the insured's lack of cooperation must be substantial and material to be a breach, and that the rule of some courts that there must be substantial prejudice to amount to a defense "is probably salutary where it is evident that the insured's infraction did not seriously impair the insurer's investigation or defense of the case."

In *2 Richards, Insurance,* (5th ed.), Sec. 361, pp. 1189-1190, the author says, in speaking of the cooperation clause: "Indeed an increasing number of courts require the insurer to show substantial prejudice or injury by the failure of the insured to cooperate before holding a breach of the clause has occurred."

In Maryland it has been held that where there has been a failure to notify the insurer of an accident, or to forward it suit papers, or a breach of a policy provision not to assume liability, no prejudice in fact need be shown before the insurer could disclaim liability. *Lewis v. Commercial Cas. Ins. Co.,* 142 Md. 472; *Employers' Liability Assurance Corp. v. Perkins,* 169 Md. 269; *Amer. Automobile Ins. Co. v. Fid. & Cas. Co.,* 159 Md. 631.

In *Farm Bureau Mut. Automobile Ins. Co. v. Garlitz,* 180 Md. 615, cited above, the insured gave a false version of the accident to the insurer and did not correct it before trial. It was held that this deprived the insured of his coverage.

In *Indemnity Ins. Co. of N. A. v. Smith,* 197 Md. 160, cited above, it was held that the insured had wilfully violated the cooperation clause by disappearing and staying hidden. In the opinion it was said "It is thus a well settled rule that to relieve an insurer of liability on the ground of lack of co-operation, discrepancies in statements made by the insured must be made in bad faith and must be material in nature and prejudicial in

effect." *Id.* at 164, citing *State Automobile Ins. Co. v. York,* 104 F. 2d 730, 733 (4th Cir.). This language was quoted in *Union Assurance Soc. v. Garber,* 223 Md. 412, 416.

In an annotation in 34 A. L. R. 2d 264, cases are cited on pages 267 and 269, *et seq.,* to support the proposition that misstatements as to the facts of an accident so as to establish that the insured was not liable, which are withdrawn or corrected prior to trial, do not constitute a breach of the cooperation clause, and for the proposition that even where the misstatement is persisted in until shortly before trial and the insurer fails to show prejudice, no breach has occurred. See, for example, *General Acc. Fire & Life Assur. Corp. v. Rinnert,* 170 F. 2d 440 (5th Cir.) ; *Pacific Indemnity Co. v. McDonald,* 107 F. 2d 446 (9th Cir.) ; *State Automobile Ins. Co. v. York, supra; Rowoldt v. Cook County Farmers Mut. Ins. Co.,* 26 N. E. 2d 903 (App. Ct. Ill.) ; *Rockmiss v. New Jersey Manufacturers' Ass'n F. Ins. Co.,* 169 A. 663 (N. J.). See also, for an interesting opinion, *Kurz v. Collins,* 95 N. W. 2d 365 (Wis.).

In the case before us Butler, under some pressure, corrected his misleading statements to the insurer sometime before the trial of the negligence case. In all probability, if Butler had told the true story in the first place and the insurance company had insisted on going to trial, it would ultimately have had to pay the policy limit of $10,000. However, we accept the company's claim that it was prejudiced by Butler's obviously erroneous version of the facts of the accident and his efforts to manufacture testimony to support that version, because he was its only witness and no trier of fact would have believed his version from the stand after cross-examination had shown what he had done. (But see *Kurz v. Collins, supra,* where it was held that in a similar situation the insurance company had suffered no prejudice.) Nevertheless, we think the insurer itself has established that it was prejudiced only as to the excess of the policy limit over $3,500. In substance and effect, the insurance company has urged upon us, as the affidavit filed in support of its motion to deny summary judgment below stated, that it would have settled the case for $3,500 if Butler had not produced Tillman and Jones

as favorable witness, and we think that it should be liable for the amount it would have paid if Butler had been frank and fair. It itself showed a lack of prejudice as to $3,500 of the liability.

> *Judgment reversed and judgment entered in favor of Margaret Ritzmann McConnaughy against Fidelity and Casualty Company of New York for $4,481, with interest from June 19, 1961, costs to be evenly divided between the parties.*