**Jerome S. CARDIN, Plaintiff,**

v.

**PACIFIC EMPLOYERS INSURANCE COMPANY, Defendant.**

**Civ. A. No. MJG–89–2524.**

United States District Court, D. Maryland.

Aug. 29, 1990.

---

Brian C. Shevlin, Brian C. Shevlin & Associates, Arlington, Va., David A. Levin, Wharton, Levin & Ehrmantraut, Annapolis, Md., for plaintiff.

Joseph F. Cunningham, Valerie L. Tetro, Joseph F. Cunningham & Associates, Washington, D.C., for defendant.

GARBIS, District Judge.

Jerome S. Cardin filed suit against Pacific Employers Insurance Company (Pacific), his legal malpractice insurer, in order to recover attorneys fees Cardin incurred in defending a civil suit for negligence and legal malpractice. Pacific has denied that it must pay these fees, arguing that it in fact provided counsel for Cardin and thereby satisfied its duty to defend its insured under the policy. Both sides have moved for summary judgment.

*Facts* [1]

In the underlying actions, Jerome Cardin and the insured law firm, Cardin & Cardin, P.A. (hereinafter collectively referred to as "Cardin") were sued in the Circuit Court for Baltimore City for their roles in the collapse of Old Court Savings & Loan, Inc. ("Old Court"). These civil suits were brought by a state-appointed conservator for Old Court to recover losses incurred due to allegedly improper investments by the failed thrift's officers and directors. The suits included claims of professional negligence, which would be covered by the Pacific policy, and intentional misconduct, which would not be covered. In addition, the actions claimed compensatory damages far in excess of the policy's $5,000,000.00 limits, and punitive damages. Jerome Cardin was also a target of a criminal investigation which led to his prosecution, conviction and imprisonment.

Before the civil suits were filed, Cardin had retained the firm of Williams & Connolly to represent him in the related criminal investigation and, possibly, other matters. After the suits were filed, Pacific retained Paul Krause, of the firm of Jordan, Coyne, Savits & Lopata, to represent the insureds in the civil litigation. Pacific provided this defense under a reservation of rights, asserting that it would not pay any judgment against the insureds based on any "non-covered or excluded grounds." Exhibit 5 to Memorandum in Support of Defendant's Motion for Summary Judg-

---

1. The facts of this case are for the most part not in dispute. When disputes in the facts do arise in the course of the discussion, the Court will consider the facts in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

ment ("Defendant's Memorandum"). It is undisputed that despite the reservation of rights, Krause was instructed by Pacific to defend the insureds "as to all allegations." Exhibit 6 to Defendant's Memorandum. The reservation of rights "was a matter strictly between the insured and the company and a matter in which [Krause was] not to be involved." *Id.* In addition, it is further undisputed that through the course of his defense of Cardin, Krause was not restricted or in any way limited by Pacific.

After Pacific engaged Krause to represent Cardin, Williams & Connolly notified Pacific that Cardin was not satisfied with Pacific's selection of counsel. Because of the "frightening allegations of wrongdoing, and enormous claims of punitive damages," Williams & Connolly requested that Cardin be able to retain counsel of his own choosing and that Pacific, therefore, pay Williams & Connolly's fees. Exhibit 26 to Defendant's Memorandum. By letter dated October 25, 1985, Pacific notified Cardin that it had retained independent counsel with respect to the coverage question and that coverage counsel believed that under applicable law Pacific had "no obligation to pay the insured's personal counsel." Exhibit 27 to Defendant's Memorandum. Williams & Connolly responded by letter dated November 4, 1985, acknowledging that Pacific "would not pay our fees in the litigation involving Jerome C. [sic] Cardin and Cardin & Cardin." Exhibit 28 to Defendant's Memorandum. Williams & Connolly noted that it disagreed with Pacific's analysis, and that it believed Cardin deserved counsel of his own choosing "under the circumstances of this case where the potential exposure so far exceeds the amount of coverage, particularly in light of [Pacific's] reservation of rights." *Id.* The letter concluded: "We disagree with your Company's conclusions and will eventually have to attest [sic] [presumably meaning "test" or "contest"] them." *Id.*

After this exchange, both Krause and Williams & Connolly, working cooperatively, continued to represent Cardin in the Old Court suits, with Williams & Connolly keeping separate accounts for its work on the criminal and civil cases against Cardin.

Negotiations between Pacific and Cardin regarding the demand for payment of Williams & Connolly's fees continued. At one point Pacific offered to pay Cardin the policy limits of $5,000,000.00 "in full satisfaction of any and all claims he may have under the ... policy, including claims for the costs of defense." Exhibit 5 to Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-motion for Summary Judgment ("Plaintiff's Memorandum"). That offer was rejected. Negotiations continued until September 11, 1986, when Pacific's coverage counsel (counsel in the instant litigation Joseph F. Cunningham & Associates) confirmed that Pacific would continue to provide a defense to Cardin "through the firm it had already retained for that purpose, i.e., Jordan, Coyne, Savits & Lopata," and that it would not assume liability for fees incurred by Cardin with any other firm, "including Williams & Connolly." *Id.* The Old Court suits were settled on February 22, 1990, with Pacific paying the policy amount of $5,000,000.00 and Jerome Cardin personally paying more than $5,000,000.00.

On these cross-motions for summary judgment, Cardin argues that as a matter of law Pacific is obligated to reimburse him for Williams & Connolly's fees. Pacific argues that Cardin's claim is barred by the statute of limitations, and that, in any event, Pacific has no obligation to pay Williams & Connolly's fees under the circumstances of this case.

*Summary Judgment*

In accordance with Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be "rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). On a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). *See also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 1608–09,

26 L.Ed.2d 142 (1970). In evaluating any motion for summary judgment the court must bear in mind that "Summary Judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ. Proc. 1).

*Statute of Limitations*

■ Pacific argues that Cardin's claim for breach of the insurance contract for not providing him with personal counsel accrued when Pacific denied his request for personal counsel, *i.e.* as of Pacific's October 25, 1985 letter. Since Cardin's complaint was not filed until more than three years later, on September 5, 1985, Pacific argues, Cardin's claim is time-barred.[2]

The parties have cited no Maryland judicial decision, and the Court has found none, specifically holding that the limitations period in a suit by an insured against an insurer, based on the insurer's denial of payment of defense costs, starts to run on the date of the denial. But the Court believes that, presented with this question, the Maryland courts would hold that the limitations period begins to run on the date the insurer denied payment, for it is on that date that the insured may sue to enforce his alleged right.

It is settled that a federal court may hear a declaratory judgment action to resolve coverage disputes regarding a carrier's duty to defend its insured. Fed.R.Civ.P. 57. *See Stout v. Grain Dealers Mut. Ins. Co.,* 307 F.2d 521 (4th Cir.1962); *Southern Md. Agric. Ass'n, Inc. v. Bituminous Cas. Corp.,* 539 F.Supp. 1295 (D.Md.1982). *See also* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2760 n. 6 (1983) (citing cases). The Maryland Court of Appeals has also held that a de-

claratory judgment proceeding is an appropriate way to hear such disputes. *See Northern Assurance Co. v. EDP Floors, Inc.,* 311 Md. 217, 533 A.2d 682 (1987) (plaintiff EDP's declaratory judgment action regarding its general liability insurance carrier's duty to defend presented a justiciable controversy based on the parties' differing readings of the policy and was proper under Maryland law).[3] Thus, in either federal or state court a coverage dispute may be resolved by declaratory judgment.

Cardin argues that the policy's "no-action" clause prevented him from filing suit against Pacific before the underlying suits were settled. The Maryland Court of Appeals has held, however, that a no-action clause similar to the one in Cardin's policy is not a bar to the insured's acting to protect himself when the insurer has disclaimed liability. In *United States Fidelity & Guar. Co. v. National Paving & Contracting Co.,* 228 Md. 40, 178 A.2d 872 (1962), the Court of Appeals rejected a contention that the no-action clause prevented an insured from settling a claim against it. The Court wrote:

It is settled law that where there is a denial of liability and a refusal to defend on the part of the insurer under the conditions described above, the insured is no longer bound by a provision of a policy prohibiting settlement of claims without the insurer's consent, or a provision making the insurer's liability dependent on the obtaining of a judgment against the insured.... *Such refusal to defend by the insurer has been held to constitute a waiver of similar restrictive provisions against the insured.*

*Id.* 178 A.2d at 875–76 (emphasis added). Since the no-action clause was held not to be an obstacle to an insured's protecting its rights by settling the claim, this Court believes the Court of Appeals would hold that such a clause would likewise not be a bar

---

**2.** The limitations period applicable to this action is three years. Md.Cts. & Jud.Proc.Code Ann. § 5–101 (1989).

**3.** In general, federal law governs the availability of a declaratory judgment in the federal courts,

but state law governs the substantive disputes. For a discussion of the effect of state law on declaratory judgment actions, *see* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2756 (1983).

to a declaratory judgment action regarding a coverage dispute between insurer and insured. *See Eureka Fed. Sav. & Loan Ass'n v. American Cas. Co.*, 873 F.2d 229 (9th Cir.1989) (no action clause did not bar suit by insureds for declaratory judgment of respective rights of parties under the policy, even before termination of underlying dispute). The cause of action thus accrues, and the insured is entitled to a declaratory judgment to determine the parties' rights, when the insurer denies payment.

In other contexts, Maryland courts have stated that the date a cause of action accrues is the date on which the limitations period begins to run. "Obviously then, the date of the action's accrual is the crucial determination in applying limitations. The accrual of a cause of action means a right to institute and maintain suit; *i.e.*, whenever one person may sue another a cause of action has accrued and the statute begins to run." *Poffenberger v. Risser*, 46 Md. App. 600, 421 A.2d 90, 91 (1980), *rev'd on other grounds*, 290 Md. 631, 431 A.2d 677 (1981) (citations omitted). *See also Levin v. Friedman*, 271 Md. 438, 317 A.2d 831, 835 (1974) ("The Maryland rule generally with reference to limitations is that they begin to run from the time the cause of action accrues").

In the most closely analogous Maryland case, it was held that the statute of limitations in a related action began to run on the date the insurer declined to provide a defense. In *American Home Assurance Co. v. Osbourn*, 47 Md.App. 73, 422 A.2d 8 (1980), an insured sued his insurance broker for failure to procure complete insurance coverage for the insured's service station. The Court of Special Appeals held that the statute of limitations began to run on the date the insurer declined to defend the insured, because at that point the insured knew that the insurance coverage was inadequate. The court rejected the

arguments that the cause of action did not accrue until the underlying suit was settled, and that the limitations period was extended during the pendency of a declaratory judgment action against the insurer itself. *Id.*, 422 A.2d at 16.

Thus, Maryland allows suits by the insured against the insurer when the insurer has denied payment of the costs of defense, despite the presence in the insurance contract of a no-action clause. Maryland law further provides that the limitations period begins to run on the date a party's cause of action accrues and the party is entitled to sue. In the most closely analogous case, the Maryland intermediate appeals court has held that a cause of action (albeit different from that alleged here) accrued upon the insurer's declining to provide a defense. *American Home Assurance Co., supra.* Therefore, this Court believes that a Maryland court presented with this question would hold that the limitations period in an insured's suit for costs of defense begins to run from the date the insurer denies payment.[4]

Cardin argues that the October 25, 1985 letter was not a definitive rejection of Cardin's request, and that because negotiations continued until Pacific's final letter on September 11, 1986, the latter date is the appropriate date to commence the running of the limitations period. The Court finds this argument to be without merit. It is clear from Williams & Connolly's November 1985 letter that they understood that Pacific had rejected the request. Subsequent communications on this subject were, therefore, in the nature of settlement negotiations. If Cardin's position were adopted as the law, settlement negotiations or requests for reconsideration of a party's expressed position could extend limitations periods indefinitely. The purposes of statutes of limitations, to identify clearly the dates a cause of action accrues and expires and to promote repose when the limitations

---

4. The Court's conclusion is reinforced by a decision from another jurisdiction. In *Hall v. Allstate Ins. Co.*, 880. F.2d 394 (11th Cir.1989) the Court of Appeals for the Eleventh Circuit construed Georgia law to reject a no-action clause as a bar to a declaratory judgment action based on the insurer's refusal to defend. The Court dismissed the action based on the breach of the duty to defend as time-barred, since the Georgia limitations period was six years and the action was filed more than six years after the insurer's refusal to defend.

period does expire, would be undermined. The Court further notes that the parties were free to agree upon an extension of the limitations period during negotiations, if they chose to do so.

Cardin further argues that Pacific had a continuing duty to pay Williams & Connolly's fees and, therefore, Cardin would be entitled to reimbursement for any fees incurred during the limitations period, even if the refusal to pay these fees was made clear outside of the period. The Court rejects this argument as well. The damages flowing from a breach of contract cannot be separated from the breach itself. If this were the law, a party would be able to sue on a long-expired claim with respect to damages incurred within three years of the suit, regardless of the date on which the cause of action arose.

In sum, Cardin's cause of action in this case is time-barred. Cardin clearly was entitled to sue on the date he learned that Pacific would not pay Williams & Connolly's fees in defending him, despite the presence of the no-action clause in his insurance contract. Because Cardin was entitled to sue as of the end of October 1985, this suit, filed over three years later on September 5, 1989, is barred by the statute of limitations. The Court would grant Pacific's Motion for Summary Judgment on that basis alone. However, the Court believes that the parties, and any reviewing court, may be aided by a decision on the merits of Cardin's claim.

### Insured's Right to Select Counsel

■ Cardin asserts that he was entitled to independent counsel[5] in the defense of the Old Court suits due to the conflict of interest that arose from Pacific's reservation of rights based on the presence of covered and uncovered claims in the underlying suits. In addition, Cardin alleges that unusual circumstances in this case, including the claim for compensatory damages far in excess of policy limits (with a provision for allocation of counsel fees if there were a recovery in excess of cover-age), the claim for punitive damages and the related criminal investigation and prosecution, justified Cardin's right to select his own counsel and have that counsel paid by the insurer. Finally, Cardin argues that because Krause's firm receives referrals frequently from Pacific, Krause might appear to have an incentive to steer his defense of Cardin in a direction favorable to Pacific.

Pacific argues that no conflict was created requiring the insurer to pay Cardin's selected counsel, either due to the reservation of rights regarding covered and uncovered claims, or due to the unusual circumstances Cardin claims. Pacific also argues that if a conflict was created requiring counsel independent of the insurer, Pacific provided such counsel in the form of Krause, and that Cardin is not absolutely entitled to select his own counsel.

As an initial matter, it is important to note that Cardin does not claim that Krause, in any way, failed to fulfill his professional and ethical obligations to Cardin. To the contrary, Cardin has no quarrel with anything that Krause did, or didn't do, in representing him. In fact, after the underlying claims were settled and the insurer's responsibility to pay Krause's fees was terminated, Cardin discharged Williams & Connolly and personally retained Krause as his attorney in various matters. Cardin's claim is based instead upon a putative "per se" rule which would require insurers to pay counsel chosen by the insured based on the potential (rather than the actuality) of a conflict of interest between the insured and counsel chosen by the insurer. According to Cardin, the circumstances of the case, i.e. the existence of covered and uncovered claims, a claim in excess of coverage (with possible allocation of legal fees), a punitive damages claim, and a related criminal investigation, are sufficient to impose on the insurers the obligation to pay counsel of Cardin's choice without regard to whether, in fact, Krause fully met all professional and ethical obligations to Cardin.

---

**5.** The term "independent counsel" has been used by the parties to refer to an attorney selected by Cardin rather than the insurer. In this opinion, the Court uses the term "independent counsel" in the same way.

This Court finds that the "unusual circumstances" alleged do not, in substance, amount to any more than the usual potential differences of objectives between an insurer · and an insured present in every case in which a plaintiff's alleged cause of action is not coextensive with the defendant's insurance coverage. The fact that the insured was the subject of a criminal investigation related to the civil cause of action, although not the norm, is not particularly rare. Of course, one under criminal investigation might wish counsel to utilize the civil litigation as a mechanism to defend against the criminal case, for example by engaging in ostensible civil discovery primarily for the purpose of obtaining discovery unavailable in the criminal case. The potential existence of such different objectives cannot, *per se*, warrant requiring the insurer to pay the fees of the insured's criminal defense counsel even if there could be an allocation of fees between the civil and criminal defense functions. It suffices to note that, in this case, there is no suggestion whatsoever that Krause failed to cooperate fully with Cardin's criminal defense counsel. Thus, the bottom line is that Cardin seeks a "per se" rule which would require the insurer to pay the counsel selected by the insured so long as the insurer and the insured might have different objectives in regard to the suit being defended by counsel selected by the insurer.

In *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975), the Maryland Court of Appeals held that an insurer could not avoid its contractual duty to defend when a conflict of interest arose due to the presence of covered and uncovered claims. Rather, the Court held that the insured must be given the right "either to accept an independent attorney selected by the insurer or to select an attorney himself to conduct his defense" at the expense of the insured. *Id.* 347 A.2d at 854. In this decision the Court did not hold, as Cardin claims, that in every circumstance where a reservation of rights is made due to the presence of covered and uncovered claims a conflict is created. Nor did it hold that when a conflict is created an insured is always entitled to reject an insurer-selected counsel in favor of someone the insured selects. The Court simply held that the insurer could not avoid its duty to defend merely because claims regarding both negligent and intentional conduct were made.

Although relied upon by Pacific, the decisions in *Allstate Ins. Co. v. Atwood*, 319 Md. 247, 572 A.2d 154 (1990) and *Southern Md. Agric. Ass'n v. Bituminous Cas. Corp.*, 539 F.Supp. 1295 (D.Md.1982) are not helpful in resolving the issue presented in the case at bar. The *Atwood* court's discussion of *Brohawn* focuses on the propriety of, and timing for, maintaining a declaratory judgment action, a point wholly separate from the question of when and whether a need for independent counsel arises, and what to do if it does arise. *Atwood*'s summary of *Brohawn*, 572 A.2d at 158, provides no guidance in considering Cardin's claims.

The decision in *Southern Md. Agric. Ass'n*, is not relevant because the insurers in that case denied any duty to defend and did not participate at all in the defense of the insureds in the underlying suits. In holding that the insurers had a duty to defend, and that a conflict of interest existed, Judge Miller merely stated that it was "not unreasonable for the [insureds] to be concerned as to the adequacy of representation by counsel not independent of the insurer," and that therefore they were entitled to independent counsel. 539 F.Supp. at 1304. Since the insurers had denied their obligation to defend, Judge Miller did not have the occasion to examine the circumstances where counsel appointed by an insurer might have *satisfied* the duty to defend. Neither did he inquire into whether counsel appointed by an insurer could in circumstances such as these satisfy the insured's right to "independent" counsel.

The debate between the parties regarding *San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 162 Cal.App.3d 358, 208 Cal.Rptr. 494 (1984) is pertinent to the issue presented herein. *Cumis* dealt with an attorney who represented *both the insurer and the insured* in the underlying suit. In that situation, where the insurer defended under a reservation of rights, a conflict was created because liability could

have been found under either covered or uncovered counts, and counsel representing both insurer or insured could not serve the best interests of both at the same time. The court held that this conflict required the appointment of independent counsel, who, though paid by the insurer, would be selected and controlled by the insured.

Cardin argues that the principles of *Cumis* require Pacific to reimburse Williams & Connolly's fees in this case. However, there is an elemental and critical difference between the *Cumis* facts and those presented in the instant case. At no time in this case did Krause undertake to represent *both* Pacific and Cardin, whereas the attorney in *Cumis* was doing so. At the start of his representation, Krause was specifically instructed to defend Cardin on all claims, covered and uncovered, and he was instructed not to consider Pacific's interest in planning his defense.

Cardin cannot successfully argue that the principles of *Cumis* should be extended to cover this situation. Indeed, the same California appellate court that decided *Cumis* later rejected a request to extend *Cumis* to a situation similar to this one. In the underlying dispute in *Native Sun Inv. Group v. Ticor Title Ins. Co.*, 189 Cal. App.3d 1265, 235 Cal.Rptr. 34 (1987), the state asserted both covered and uncovered claims regarding title to the insured property. The insurer selected and paid for Mr. Jampol to act as counsel for Native Sun. Jampol stated, however, that he felt his only client was Native Sun. *Id.*, 235 Cal. Rptr. at 35. The Court rejected an extension of the *Cumis* holding to require the insurer to pay counsel selected by the insured with respect to the underlying claims in that case. Because the coverage question would not be resolved in the underlying dispute, there was no genuine conflict between insurer and insured. *Cumis*, the court held, applied only where the information "developed at trial would affect the determination as to coverage." *Id.* 235 Cal.Rptr. at 40 (quoting *McGee v. Superior Court*, 176 Cal.App.3d 221, 226, 221 Cal. Rptr. 421 (1985)).

The information that would have been developed at a trial in the Old Court suits may well have had an effect on the coverage dispute between Pacific and Cardin. However, even this would not necessarily require Pacific to pay the fees of Williams & Connolly rather than Krause. Indeed, the California court in *Native Sun* expressly rejected an argument to extend *Cumis* to the situation presented here. The court stated:

> Because the state was asserting uncovered claims, it might be argued that to the extent Jampol's representation could result in liability on the uncovered claims, as opposed to the covered claims, the rationale of *Cumis* nonetheless requires compensation of independent counsel. However, in this case we decline to take that step. The trial court found that Ticor gave Jampol:
>
> > "carte blanche to litigate all the issues ... covered and uncovered; and that at all times ... Mr. Jampol proceeded diligently to litigate the matters that he was charged with on behalf of his client Native Sun. At no time, the court finds, did Mr. Jampol prefer the defendant's interest to those of his client, Native Sun, nor did he allow questions of coverage—though he was informed of them—to interfere with his litigation decisions regarding the third party claims."
>
> Under these circumstances, where the retained attorney in fact was not subject to the conflicting forces which gave rise to *Cumis*, an extension of *Cumis* is not warranted. Ticor fulfilled its duty to defend.

235 Cal.Rptr. at 40.

Here, Pacific argues that no duty to provide independent counsel arose, either from the mere reservation of rights due to the presence of covered and uncovered claims, or from the unusual circumstances Cardin alleges were present in this case. The Court believes that, given the instructions received by Krause to devote himself to representing Cardin, given that Krause was at no time also representing Pacific in any aspect of the case, and given an attorney's ethical responsibility to work in be-

half of his client and no one else,[6] no conflict was created requiring separate counsel for Cardin. Krause simply was not subject to "the conflicting forces which gave rise to *Cumis.*"

In addition, even if a conflict were present, the Court believes that *Krause* was Cardin's "independent" counsel. Krause was not working for Pacific at all and in fact worked only for Cardin's interests. Cardin makes no allegation that Krause was biased in his representation towards Pacific's interest. Any possibility that an actual conflict affected Krause's representation of Cardin is conclusively refuted by the fact that Cardin expressly declines to make any allegation whatsoever against Krause[7] and, further, continues to be represented by Krause and his firm at his own expense.

In sum, Maryland law does not require that Pacific pay Williams & Connolly's fees since it provided an attorney to represent Cardin and took every step to ensure that attorney's fidelity to Cardin and independence from the insurer. The decisions of the courts of other states do not suggest that they would hold otherwise. Therefore, on the merits of Cardin's claim, summary judgment for the defendant is warranted.

For the foregoing reasons, by virtue of the expiration of the limitations period and the absence of a meritorious claim, the Court will, by separate Order, deny Plaintiff Jerome S. Cardin's Motion for Summary Judgment, grant Defendant Pacific Employers Insurance Company's Motion for Summary Judgment and enter judgment in favor of the Defendant.

---

6. As noted by the Maryland Court of Appeals in *Brohawn,* the Canons of Professional Responsibility governing an attorney's conduct require that an attorney selected and paid by an insurer to represent the insured must remain faithful to his client, the insured. An attorney, "although employed by the insurer, still has the duty to *represent the insured with complete fidelity and may not advance the interests of the insurer to the prejudice of the rights of the insured.*" *Bro-*

*hawn,* 347 A.2d at 852 (citing *Fidelity & Cas. Co. v. McConnaughy,* 228 Md. 1, 179 A.2d 117 (1962)).

7. Should any insured in Cardin's position have a legitimate allegation that counsel selected by the insurer did not, in fact, fully meet his or her professional and ethical obligations, there would be ample remedies available.