**THE DRIGGS CORPORATION,**
The Driggs Group, Inc.

v.

**PENNSYLVANIA MANUFACTURERS'
ASSOCIATION INSURANCE COMPANY, Reliance Insurance Company.**

Civ. No. S 97–2134.

United States District Court,
D. Maryland.

May 4, 1998.

Robert D. Ryan, c/o Glenn H. Haase, L.L.C. P.H., Boston, MA, for The Driggs Corporation.

Drake C. Zaharris, Hodes, Ulman, Pessin & Katz, P.A., Towson, MD, Una M. Perez, Hodes, Ulman, Pessin & Katz, P.A., Towson, MD, Robert D. Ryan, c/o Glenn H. Haase, L.L.C. P.H., Boston, MA, for the Driggs Group, Inc.

Randell Hunt Norton Law Office, Washington, DC, John Jude O'Donnell, Thompson, O'Donnell, Markham, Norton and Hannon, Washington, DC, for Pennsylvania Manufacturers' Association Insurance Company.

Edward P. Murphy, Allewalt & Murphy, P.A., Baltimore, MD, Arthur P. Caltrider, Jr., Allewalt and Murphy, Baltimore, MD, Steven J. Engelmyer, Adam M. Silverman, Connolly Epstein Chicco Foxman Oxholm & Ewing, Philadelphia, PA, for Reliance Insurance Company.

Everett Charles Dann, Jr., Goodell, DeVries, Leech and Gray, Baltimore, MD, for United States Fire Insurance Co., The North River Insurance Company, defendants.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This is a case in which the plaintiffs, having successfully defended certain environmental litigation in the Eastern District of Virginia, claim that their insurers violated contractual and tort duties in connection with furnishing them counsel in the underlying litigation. The issues have been fully briefed on summary judgment, and no oral hearing is needed. Local Rule 105.6, D.Md.

The Court will, first, address the claims that, under Maryland law, the defendants' insurer (PMA) had a duty to supply the plaintiffs (Driggs) with "independent counsel" in the underlying litigation and must now, in consequence, pay fees that Driggs paid to counsel that it independently retained, in the amount of $2,800,000.00. Driggs contends that, because there existed a conflict of interest that required PMA to allow it to retain independent counsel, PMA is responsible for the costs to Driggs of retaining such counsel.

Both this Court and the Court of Appeals of Maryland have dealt with general questions raised by claims of conflict of interest in connection with insurer-supplied counsel. In *Cardin v. Pacific Employers Ins. Co.*, 745 F.Supp. 330 (D.Md.1990), Judge Garbis of this Court held that, under the circumstances of that case, a "reservation of rights" letter did not create a conflict that required the liability insurer to furnish independent counsel to the insured.

In assessing the precedential value of a decision of this Court in a diversity case, this Court must keep in mind that it is the courts of Maryland, not this Court, that ultimately frame the law that this Court must apply in diversity cases under the rules in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). *See, e.g., Wilson v. Ford Motor Co.*, 656 F.2d 960 (4th Cir.1981).

In *Allstate Ins. Co. v. Campbell*, 334 Md. 381, 395, 639 A.2d 652 (1994), the Court of Appeals held that independent counsel must be appointed when there is an actual conflict of interest between the insured and the in-

surer, *citing Fid. & Cas. Co. v. McConnaughy*, 228 Md. 1, 179 A.2d 117 (1962). *See also Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975). This Court is convinced that Judge Garbis' reading of Maryland law in *Cardin* was correct and consistent with Maryland law as discussed in *Allstate Ins. Co. v. Campbell*, which essentially compiled holdings and dicta in prior cases of the Court of Appeals.

 As in *Cardin*, the reservation of rights letter in this case did not amount to an actual conflict of interest, and the law is clear in Maryland, under *Allstate*, 334 Md. at 395, 639 A.2d 652, that the mere fact of "dual" representation does not raise a conflict of interest, and, further, that dual representation is essentially waived by policy language giving the insurer the right to control the litigation by choosing counsel. Thus, the insurer here was under no duty to furnish independent counsel simply because there was a potential conflict of interest.

 Thus, the Court is concerned with whether there was such an actual conflict of interest in this case as to require that PMA furnish independent counsel to Driggs. Maryland law clearly recognizes a duty to furnish independent counsel where there is an actual conflict of interest. *Allstate, supra.* Although the Driggs opposition to PMA's present motion makes much of an early phone conversation between Mr. Travis of PMA and Mr. Gavett of the PMA-selected firm, Gavett & Datt, this Court is of the opinion that there is no triable dispute on the issue of whether were was an actual conflict of interest. As a matter of law, there was not.

Mr. Gavett was well known to Driggs as having represented PMA. He and his firm were kept on the case by Driggs throughout the litigation, Mr. Gavett having repeatedly requested that any conflict of interest perceived by Driggs be brought to his attention. Rather than having been asked to withdraw or having been discharged as counsel, Mr. Gavett was repeatedly instructed by Driggs to remain in the case. Driggs' counsel now claims that the "paramount" reason for keeping Gavett in the case was a fear that, if it discharged Gavett, Driggs would be faced with a "failure to cooperate" claim by PMA. There is, however, no indication this motivation was ever brought to the attention of, or discussed with, Gavett or PMA. It is, rather, simply based on the perception of an attorney with the firm that Driggs chose to retain as additional counsel. *See* Deposition of Holt at 145.

Plaintiffs' attempt to turn the molehill of a conversation between Gavett and Travis into a mountainous conflict of interest is unavailing. Rather, the evidence indicates that, as soon as he was apprised by Mr. Travis that the hypothetical insured, in Mr. Travis' question about coverage for an oil pipeline leak, was Driggs, Gavett told Travis that he could not represent PMA in the matter of coverage, because to do so would breach his ethical obligation to Driggs, a current client. Mr. Gavett suggested to Travis the name of an attorney that PMA might wish to retain on coverage issues between itself and Driggs.

These preliminary discussions certainly did not result in an actual conflict of interest that, thereafter, disqualified Gavett from acting as attorney for Driggs. In light of the paucity of evidence supporting the plaintiffs' position in this matter, the Court is of the opinion that no reasonable fact-finder could find in their favor by a preponderance of the evidence, and, thus, summary judgment is appropriate on the issue of whether PMA had an obligation to provide independent counsel for Driggs. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

 The Court recognizes that plaintiffs, in their opposition, have made reference to the opinion of an expert in legal ethics, Professor Roy Simon. In connection therewith, the plaintiffs have sought leave to supplement their expert witness disclosure post-discovery, to include Professor Simon as a "rebuttal" expert. The Court is not inclined to permit such a supplement, for the simple reason that plaintiffs have the burden of proof on the issue of conflict of interest, and it is absolutely unfair to allow them to sit back and decide to retain an expert wit-

ness on a cardinal issue after the close of discovery, and after a motion for summary judgment has been filed. The Court is not convinced that Professor Simon is truly a rebuttal expert, nor is it convinced that plaintiffs' late designation of him is justified or excused by any actual or perceived inadequacy in PMA's disclosure concerning Professor Daly. Therefore, the Court will not consider any statement submitted by Professor Simon, because to do so would fly in the face of the rule that summary judgment motions should be made—and opposed—on the basis of discovery that has taken place during the regular period provided therefor, as recognized in *Celotex Corp. v. Catrett*, 477 U.S. at 326 n. 6, 106 S.Ct. 2548. Furthermore, this Court has not in any way relied on the opinion of PMA's expert, Professor Daly, in that the issues presented on summary judgment are issues of law—in this Court's opinion—on which the Court is not in need of expert testimony. Thus, even if the Court were to consider any submission by Professor Simon, the Court would not perceive a triable factual dispute in the case.

Moving on to Driggs' suggestion that PMA breached a contractual or tort duty, or both, to Driggs in assigning the case to Gavett & Datt, rather than to a "megafirm." Even though Driggs won in the underlying litigation, the theory of recovery here is that, because PMA breached a duty in assigning Gavett & Datt in the first place, tort or contract damages, in the amount representing retained counsel's fee of $2,800,000, are recoverable. the Court is of the opinion that no triable issue is presented on this claim.

▇▇ First, there is no authority in Maryland expressly recognizing ˙a bad faith *cause of action in tort against an insurer in* circumstances involving the decision of whom to retain as counsel, or recognizing an action for breach of contract absent an actual conflict of interest. Certainly, no such duty was recognized in *Allstate Ins. Co. v. Campbell*, either directly or by implication. Despite the perception held by Driggs' counsel that only a megafirm was competent to have been selected by PMA to serve as counsel for Driggs in the underlying litigation, the fact is

that an insurer is free to select counsel of its choice to represent its insured. Any counsel it selects, must, of course, be admitted to the bar and competent to try a case. Certainly, the attorneys at Gavett & Datt, although not megafirm attorneys, were admitted to the bar and were competent to try a case.

Indeed, despite the views of plaintiffs' counsel, solo and small-practice attorneys have consistently won in David and Goliath contests far too numerous to cite; they have won major victories for their clients, despite being outnumbered, outpapered and outspent by megafirms. The Court expressly declines plaintiffs' invitation to engraft a duty upon an insurer's choice of counsel that will inevitably result in second-guessing and secondary litigation, particularly where the insured loses the underlying litigation. It would be an intolerable result, as a matter of public policy and of judicial economy, to invite relitigation of thousands of cases under the guise of improper selection of insurance defense counsel. If incompetent they were, a malpractice action could be brought against them by the insured, but no duty has been breached by the insurer in the mere act of their selection. To be sure, in this case, the insured won, and it now seeks reimbursement for the independent counsel it chose to retain, but this is a distinction without a difference in terms of the public policy and judicial economy aspects of the issue.

Thus, this Court, consistent with its duty under *Wilson v. Ford Motor Co., supra*, is firmly of the opinion that the Court of Appeals of Maryland would not recognize, under the facts of this case taken most favorably to the plaintiffs, any breach of duty by the insurer in its selection of the firm of Gavett & Datt to represent Driggs in the underlying litigation.

For the reasons stated, an order will be entered separately, denying the plaintiffs' motion for leave to supplement their expert witness disclosure, and granting the defendants' motion for summary judgment.

### ORDER AND JUDGMENT

For the reasons stated in the foregoing Memorandum Opinion, it is, this 4th day of

May, 1998, by the Court, ORDERED and ADJUDGED:

1. That plaintiffs' motion for leave to supplement their expert witness disclosure BE, and the same hereby IS, DENIED;

2. That defendants' motion for summary judgment BE, and it hereby IS, GRANTED;

3. That judgment BE, and it hereby IS, entered in favor of the defendants, and against the plaintiffs, with costs; and

4. That the Clerk of Court mail copies hereof and of the foregoing Memorandum Opinion to counsel for the parties.